T. A. & A. BIDDLE v. JAMES HOOVEN.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILA-
DELPHIA COUNTY.

120   220
187   109

120      221
185 US   64

120      221
36 SC   137

Argued March 30, 1888—Decided April 30, 1888.

Section 7, act of April 27, 1855, P. L. 369, providing: "That in all
cases where no payment, claim or demand shall have been made on ac-
count of, or for any ground-rent, annuity or other charge upon real
estate for twenty-one years, or no declaration or acknowledgment of
the existence thereof shall have been made within that period by the
owner of the premises, subject to such ground-rent, annuity or charge,
a release or extinguishment thereof shall be presumed, and such
ground-rent, annuity or charge shall thereafter be irrecoverable," af-
fecting the remedy merely, is not unconstitutional as impairing the
obligation of a contract: Korn v. Browne, 64 Pa. 55, limited.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILL-
IAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 292 January Term 1888, Sup. Ct.; court below, No.
520 December Term 1885, C. P. No. 2.

On January 27, 1886, a summons in covenant sur ground-
rent deed was issued in an action by Thomas A. Biddle and
Alexander Biddle, surviving trustees under the will of Chris-
tine Biddle deceased, against James Hooven. The writ hav-
ing been returned, nihil habet, an alias issued which was
returned served on Patrick Dougherty, tenant in possession,
advertised, and nihil habet as to defendant. On March 13,
1886, a rule to allow John Kilpatrick to intervene as terre-
tenant and party defendant was made absolute.

The statement of the plaintiff's cause of action showed:

That on October 2, 1845, Henry J. Williams and wife con-
veyed a certain lot in Philadelphia in fee simple to James
Hooven, reserving therein a yearly ground-rent, by a deed
containing the following covenants:

And the said James Hooven for himself, his heirs, execu-
tors, administrators and assigns, doth covenant, promise and
agree, to and with the said parties of the first part, their heirs,

executors, administrators and assigns, by these presents, that he, the said James Hooven, his heirs and assigns, shall and will well and truly pay, or cause to be paid, to the said parties of the first part, their heirs, executors, administrators and assigns, the aforesaid yearly rent or sum of forty-five dollars lawful silver money aforesaid, on the days and times hereinbefore mentioned and appointed for payment thereof, without any deduction, defalcation or abatement for or on account of any taxes, charges or assessments whatsoever . . . . Provided always nevertheless, that if the said James Hooven, his heirs or assigns, shall and do, at any time within seven years from the date hereof, pay, or cause to be paid, to the said parties of the first part, their heirs or assigns, the just and full sum of seven hundred and fifty dollars lawful money aforesaid, and the arrearages of the said yearly rent to the time of such payment, then the said yearly rent hereby reserved shall forever thereafter cease and be extinguished, and the covenant for payment thereof shall become void ; and then they, the said parties of the first part, their heirs or assigns, shall and will at the proper costs and charges in the law of the said grantee, his heirs or assigns, by some proper deed or assurance in the law to be well and sufficiently executed and acknowledged, grant release and extinguish the said yearly ground-rent hereby reserved, and all their estate and interest in and to the said lot of ground hereby granted, with the appurtenances, unto the said James Hooven, his heirs and assigns, forever, anything hereinbefore contained to the contrary notwithstanding . . . . .

That in May, 1865, the said ground-rent was conveyed by Henry J. Williams to the plaintiff trustees, who brought this suit.

On November 2, 1857, John Kilpatrick, the terre-tenant defendant, had purchased the premises out of which the ground-rent was reserved at a sheriff's sale thereof as the property of James Langan, the sheriff's deed, dated on November 14, 1857, describing the premises conveyed as being the same "which James Hooven and wife by indenture dated the 18th day of August, A. D. 1857, recorded . . . . . conveyed unto said Langan in fee, subject to the payment of a certain yearly ground-rent or sum of forty-five dollars, in equal half yearly

payments on the first days of the months of January and July," etc., and conveying the same to said John Kilpatrick, his heirs and assigns, " subject to the said yearly ground-rent or sum of forty-five dollars. To have and to hold unto the said John Kilpatrick, his heirs and assigns, subject as aforesaid," etc.

On January 22, 1887, Kilpatrick pleaded " covenants performed, covenants performed absque hoc, with leave," etc., and specially, that " no payment, claim or demand has been made on account of or for the said yearly ground-rent for twenty-one years prior to the commencement of said suit, and no declaration or acknowledgment of the existence thereof has been made within that period by the owner of the premises subject to said ground-rent, and this he is ready to verify, wherefore he prays judgment," etc.

The plaintiffs replied, infregit conventiones, non solvit, and to the special plea demurred, showing as ground : " Because no claim or demand is necessary; the act by virtue of which said plea was filed impairs the obligation of the contract between grantor and grantee in the deed from Henry J. Williams to Hooven, dated October 2, 1845, reserving the ground-rent, which obligation the said terre-tenant Kilpatrick has taken upon himself by his deed dated November 14, 1857."

On January 26, 1888, under an agreement filed, the general pleas and the replication thereto were withdrawn, and on January 28th, on the demurrer to the special plea the court, without opinion filed, ordered judgment to be entered for the defendant.

Thereupon the plaintiffs took this writ, assigning the said order as error.

*Mr. Richard M. Cadwalader*, for the plaintiffs in error :

1. By his purchase at sheriff's sale, the deed accepted reciting the contract and binding him by the covenants running with the land, the defendant has taken upon himself to perform the contract, holding out to the world that he enjoys the land in consideration of payment to his landlord, as expressed in Ingersoll v. Sergeant, 1 Wh. 337. He binds himself not only to pay the rent at the times and in the manner in which it should become due, but with a further expressed covenant

as to the method of extinguishment. The operation of this proviso is of the nature of a covenant to carry out a contract especially favored, as the courts have at various times declared. This contract the court described in Ingersoll v. Sergeant as one of landlord and tenant yielding rent service, and therefore to be governed by the rules regulating rent service, which, in the absence of the statute of Quia Emptores, imports a tenure with fealty to pay the rent forever: Wallace v. Harmstad, 44 Pa. 492.

2. " The ground-rent in question being an estate purely legal, and there being no act or statute of limitation in force here which comprehends it, it follows that the courts have no authority to interpose a limitation that would bar the plaintiff of his right to enjoy it. The exercise of such a power would not only seem to be intrenching upon the legislative province, but upon the constitutional right of the plaintiff, by depriving him of his estate without having given him any previous warning of his danger, so as to enable him to guard against it: " St. Mary's Church v. Miles, 1 Wh. 229. See also McQuesney v. Hiester, 33 Pa. 435; Lyons v. Adde, 63 Barb. 89; Naglee v. Ingersoll, 7 Pa. 196; Cadwalader v. App, 81 Pa. 194; Wood's App., 30 Pa. 274; Hillerman v. Ingersoll, 5 Phila. 143.

3. Unlike the statute of limitations, which merely affects the remedy by providing that no action can be maintained after the lapse of a certain number of years, § 7, act of April 27, 1855, P. L. 369, goes further, and deprives the owner of the ground-rent of his estate and gives it to another. It has been declared that the legislature could not divest the grantor of his estate in an irredeemable ground-rent, with all its provisions for taking his property under the guise of public use with compensation: Palairet's App., 67 Pa. 479. How then can it divest him of his estate without compensation? To divest ownership without personal notice and without direct compensation, is the instance in which a constitutional government approaches most near to an unrestrained tyranny: Gault's App., 33 Pa. 94; Stuber's Road, 28 Pa. 199; Coster Tide Water Co., 3 C. E. Green 65.

4. It is sought to evade this argument by replying, as in Sturgis v. Crowinshield, 4 Wheat. 193, that the remedy may certainly be modified. It was also decided in Evans v. Mont-

gomery, 4 W. & S. 220, that the legislature may pass laws limiting, modifying, and even taking away the remedy; but then, the court added, "If the parties to an agreement include in it the legal remedies by which the contract is to be enforced, a legislative enactment changing the remedial process agreed on in regard to that contract is as clearly unconstitutional as the attempt to impair the obligation of any other contract." The legislature can no more overthrow the lawful contracts of parties, under guise of remedial legislation, than by direct assault: Petition of Brown, 9 Phila. 548; Petition of Longstreth's Executors, 7 Phila. 460; Haine's App., 73 Pa. 169. Palairet's App., 67 Pa. 479, therefore, and Hepburn v. Griswold, 8 Wall. 603, certainly overrule Korn v. Browne, 64 Pa. 55, upon which alone the defendant in this suit relies, and leave the law as it was with Ingersoll v. Sergeant and St. Mary's Church v. Miles.

*Mr. William Kelley,* for the defendant in error:

1. The question of the constitutionality of the act of 1855 was fully decided in Korn v. Browne, 64 Pa. 55. The act is a statute of limitation operating on the remedy and does not impair the obligation of the contract. It presumes an extinguishment of the rent when no payment, claim or demand has been made for or on account of the same for the statutory period. The proviso to § 7 gives to the plaintiff the "previous warning of his danger so as to enable him to guard against it," referred to by the court in St. Mary's Church v. Miles, 1 Wh. 229. The owner's right to the rent is not higher than the right of owners of land whose title may be divested by a peaceable and adverse possession of another for twenty-one years.

2. It is argued by plaintiffs that this ground-rent could only be extinguished by deed, and that therefore there could be no legal presumption of payment. That this is fallacious is apparent from the language of the covenant, which provides that upon payment of the principal of the rent and arrearages to the time of payment "then the said yearly rent hereby reserved shall forever thereafter cease and be extinguished and the covenant for payment thereof shall become void." The payment, therefore, would of itself extinguish the rent without any formal deed of extinguishment or release, and, as has often

happened in Philadelphia, ground-rents have been paid off in this way, and no deed of extinguishment executed. It was to remedy the hardships following from this state of affairs that the act in question was passed.

OPINION, MR. JUSTICE PAXSON:

This record raises the question of the constitutionality of the seventh section of the act of April, 27, 1855, P. L. 369. The said section is as follows:—

" That in all cases where no payment, claim, or demand shall have been made on account of, or for any ground-rent, annuity, or other charge upon real estate, for twenty-one years, or no declaration or acknowledgment of the existence thereof shall have been made within that period by the owner of the premises, subject to such ground-rent, annuity or charge, a release or extinguishment thereof shall be presumed, and such ground-rent, annuity or charge, shall thereafter be irrecoverable: Provided, that the evidence of such payment may be perpetuated by recording in the recorder of deeds' office of the proper county, the duplicate of any receipt therefor, proved by oath or affirmation to be a true copy of that signed and delivered in the presence of the payer, and witnessed at the time by the deponent, which recorded duplicate or the exemplification of the record thereof, shall be evidence until disproved; and the evidence of any such claim or demand may be perpetuated by the record of any judgment recovered for such rent, annuity or charge, in any court of record, or the transcript therein filed of any recovery thereof by judgment before any alderman or justice of the peace, which records and judgment shall be duly indexed: Provided, that this section shall not go into effect until after three years from the passage of this act."

The contention of the plaintiffs is, that the act impairs the obligation of the contract between the ground-tenant and the ground-landlord, and hence is unconstitutional and void. This is all there is in the case.

The defendants refer us to Korn v. Browne, 64 Pa. 55, as decisive upon this point. We cannot give that case the full effect claimed for it. An examination of it shows that the only question there argued was, whether the section of the act

referred to has a retrospective as well as a prospective operation with regard to ground-rents. This appears in the first sentence of the opinion of Justice READ. He very properly held that as the seventh section did not go into effect for three years, and gave ample time to all owners of ground-rents to make claims and demands for the same, so as to prevent the bar of the statute, that this prospective commencement made the retrospective bar not only reasonable but constitutional. In other words the act gave ample time to preserve all existing rights.

I shall not attempt to show that statutes of limitation, which affect the remedy merely, are constitutional. There are some few legal principles which may be regarded as settled, and this is one of them. If, therefore, the act of 1855 merely operates to deprive the owner of a remedy for the collection of his ground-rent after the expiration of twenty-one years from any suit, claim, or demand for the same, we cannot see any sufficient reason for holding that the act is unconstitutional. The plaintiffs, however contend that the act goes further, and not only takes away their remedy, but destroys their estate, and refer us to that portion of the seventh section which declares that "a release or extinguishment thereof shall be presumed (after twenty-one years without demand, etc.), and such ground-rent, annuity, or charge shall thereafter be irrecoverable." The most that can be made of this language is that it makes the ground-rent irrecoverable after the statutory period. After the lapse of twenty years mortgages, bonds, judgments, arrears of ground-rents, in fact all specialties, are presumed to be paid. But this is a presumption of fact and liable to be rebutted; not a legal presumption, as was erroneously stated in Korn v. Browne, supra. The act of 1855, in its application to ground-rents, made this presumption a legal presumption after twenty-one years, which cannot be rebutted.

The only ground upon which this kind of legislation can be justified is that after the lapse of the statutory period, the mortgage or other security is presumed to have been paid, or the ground-rent extinguished. The payment of a mortgage and the extinguishment of a grount-rent mean substantially the same thing. The act was not intended to destroy the ground-landlord's ownership in the rent; it does not impair

his title thereto; nor can it be said to impair the contract by which the rent was reserved, but from well-grounded reasons of public policy it declares that when the owner of such rent makes no claim or demand therefor for twenty-one years, it presumes it has been extinguished, which means nothing more than that it has been paid. The language cited, as before observed, affects only the remedy; if it meant more, it would be void for the excess.

Judgment affirmed.